# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6979 | **DATE** | 1/24/2001 |
| **CASE TITLE** | McNally Tunneling Co. vs. City of Evanston | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Because the Agreement requires consent to arbitrate, and because we find the City did not consent to arbitrate, we find that arbitration cannot be compelled. For the foregoing reasons, we deny the motion to compel arbitration (5-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| GL | courtroom deputy's initials | 01 JAN 25 PM 9:05 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

McNALLY TUNNELING CORPORATION, )
)
    Plaintiff, )
)
v. ) No. 00 C 6979
)
CITY OF EVANSTON, ILLINOIS, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff, McNally Tunneling Corporation ("MTC"), moves pursuant to the Federal Arbitration Act, 9 U.S.C. §4, to compel arbitration against defendant, City of Evanston (the "City").[1] As explained below, we deny the motion to compel.

### BACKGROUND

On a motion to compel arbitration, the background facts are taken from the parties' pleadings, including attached exhibits and affidavits. *Robert Half International, Inc. v. Thompson*, 1999 WL 138849, *1 (N.D. Ill. March 5, 1999) (citing *Capitol Leasing Co. v. FDIC*, 999 F.3d 188, 191 (7th Cir. 1993)).[2] In September 1998, MTC submitted a bid to perform certain sewer-related excavation and tunneling construction for the City of Evanston Relief Sewer Project, Phase VI-A

---

[1] In the alternative to its motion to compel, MTC asserts a claim for declaratory judgment and asserts claims in its complaint for breach of contract and cardinal changes, misrepresentation, concealment, bad faith and estoppel. We only address the motion to compel arbitration here.

[2] Simply because the City includes affidavits and other extrinsic evidence along with its opposition to MTC's motion does not give us cause to convert the opposition to a motion for summary judgment as MTC argues in both of its motions to strike. First of all, the City's response is not a motion to dismiss - it is an opposition to a motion. Second, materials outside the pleadings may be considered in ruling on a motion to compel arbitration so we will not convert the opposition to a motion for summary judgment. Therefore, MTC's motions to strike are moot.

(the "Project"). This bid was accepted in February, 1999. In March, 1999, MTC entered into an agreement with the City to perform work and supply materials to the Project (the "Agreement"). At the same time, the City contracted with Harza Environmental Services ("Harza") to serve as Project engineer, to prepare contract documents, to act as the City's Project representative and to provide other services. In addition to the language of the Agreement, the Agreement incorporates both Paragraph 30.1 of the General Conditions of Construction Contract Document ("General Conditions") which comes from 35 Ill.Admin.Code Chap.11, 360. App.A, as well as the Supplemental General Conditions/Special Provisions. The Agreement contains the following relevant provisions:

> Paragraph 30.1 of the General Conditions:
> All claims, disputes and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof, except for claims which have been waived by the making and acceptance of final payment as provided by Section 20 shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.
>
> Section 107(17) of the Supplemental General Conditions/Special Provisions:
> Delete paragraph 30.1 of the General Conditions and replace it with the following: All claims, counter-claims, disputes and other matters in question between the Owner and the Contractor arising out of, or relating to this Agreement or the breach thereof will be decided by arbitration, if the parties mutually agree, or in a court of competent jurisdiction within the State.
>
> Paragraph 14(h) of the Agreement:
> All claims, counter-claims, disputes and other matters in question between the Owner and the Contractor arising out of, or relating to this Agreement or the breach thereof will be decided by arbitration, if the parties mutually agree, or in a court of competent jurisdiction within the State.

MTC claims that the City substantially and materially breached much of the Agreement. MTC allegedly began to encounter delays, disruptions, interferences and hindrances in its mobilization and performance of the Project in May, 1999. The City's alleged breach caused MTC to perform additional work, incur additional costs and sustain damages. MTC also alleges that beginning November 5, 1999, it encountered substantial unforeseen, differing and/or changed

2

subsurface conditions that materially differ from the conditions depicted in the Agreement and that it sustained damages as a direct result of these conditions. MTC alleges that it has timely presented its claims for additional compensation and adjustments to the City and that the City has failed to provide MTC with any such compensation, which it is required to do under the Agreement.

MTC alleges that throughout the course of the Project, meetings were conducted to discuss MTC's claims for additional compensation and adjustments. MTC alleges that on July 29, 1999, in response to its request for a disputes review board on April 6, 1999, the City and Harza advised MTC that the Agreement provided for and the City consented to, expedited arbitration of certain contract claims and disputes.[3] MTC also alleges that "during subsequent meetings" Richard Figurelli ("Figurelli"), the City's Superintendent of Water and Sewers, advised MTC that it could commence arbitration proceedings to resolve MTC's claims for equitable adjustments of the contract price and contract time amounting to no more than $100,000 in damages. Additionally, MTC contends that Harza directed MTC to file for arbitration to resolve its claims. According to MTC, on March 9, 2000, Harza allegedly represented in writing that the Agreement required arbitration of MTC's claims. On March 21, 2000, MTC filed a Demand for Arbitration with the American Arbitration Association ("AAA") including a wide range of claims totaling approximately $5 million in damages. On April 7, 2000, MTC and the City advised the AAA to hold the arbitration proceedings in abeyance pending the parties' attempt to conduct settlement negotiations. Settlement talks failed and now the City refuses to arbitrate. MTC moves to have this Court compel arbitration of all of its claims against the City.

---

[3] We note that in all the instances of alleged consent, neither MTC nor the City provide any concrete evidence of such consent or lack thereof. Both sides simply make allegations back and forth that consent was either given, or that it was not given.

## DISCUSSION

An agreement to arbitrate is treated like any other contract. 9 U.S.C. §2. Whether parties agreed to submit their claims to arbitration is a matter of contract interpretation and is an issue to be determined by the court. *AT&T Tech. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986). The arbitrability of a dispute depends on whether the parties agreed to arbitrate it; a party "can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 945 (1995). In determining whether the parties agreed to arbitrate a certain matter, the court should apply normal contract principles, *see First Options*, 514 U.S. at 944, and apply state-law contract principles. *See Perry v. Thomas*, 482 U.S. 483, 492 (1987). In Illinois, contract terms are given their ordinary meaning. *See Gray v. Mundelein College*, 296 Ill.App.3d 795, 805 (1998). A contract is ambiguous if its language is reasonably and fairly susceptible to more than one meaning. *Emergency Medical Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996). "A contract must be interpreted as a whole, giving meaning and effect to each provision." *Emergency Medical Care, Inc.*, 94 F.3d at 1061. While there is a federal policy in favor of arbitration, that policy does not give the courts "a license to compel arbitration absent an agreement to do so." *Adamovic v. Metme Corp.*, 961 F.2d 652, 654 (7th Cir. 1992) (presumption in favor of arbitration only attaches after enforceable arbitration clause exists). With these principles in mind, we attempt to determine whether there is a contractual basis upon which to bind the City to arbitration under the Agreement.

First, the contract is not ambiguous. Here the Agreement specifically replaces the General Conditions with more specific conditions, and we must give effect to the parties' intent to do so when construing a contract. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill.App.3d 871, 876 (1997). MTC takes the position in its reply brief that arbitration is still mandatory because paragraph 30.1 of the General Conditions requires arbitration. While the General

4

Conditions do state disputes shall be settled with arbitration, we find arbitration is not mandatory. Just because the Illinois Administrate Code requires that each construction contract "shall include the 'General Conditions,'" see 35 Ill.Admin.Code, Ch.II §360.02(h), does not mean that parties are not free to add additional language to their agreements. MTC argues that the deletion of paragraph 30.1 is void because the administrative regulations do not expressly permit modification of the General Conditions. However, nothing in the FAA limits the parties' freedom to design arbitration clauses to their own tastes and needs. *Olsten's of Chicago, Inc. v. Olsten Corp.*, No. 99 C 4484, 1999 WL 1045216, *3 (N.D.Ill. Nov. 15, 1999).

Our review of the relevant language yields the conclusion that the City is not required to arbitrate any dispute to which is has not agreed and MTC has no right under the Agreement to compel the City to arbitrate absent such agreement. Under Illinois law, where two provisions in a contract addressing the same subject conflict, the more specific clause controls. *See Grevas v. U.S. Fidelity and Guaranty Co.*, 152 Ill.2d 407, 411 (1992); *McDonald's Corp. v. Butler Co.*, 158 Ill.App.3d 902, 909 (1987) (full effect should be given to the clause which is the more principal and specific, and the general clause should be subjected to such modification or qualification as the specific clause makes necessary). Paragraph 14(h) is part of the Agreement specifically prepared between MTC and the City, while paragraph 30.1 is found in the Illinois Administrative Code. Therefore, it is the more specific provisions of paragraph 14(h) and section 107(17), which deletes paragraph 30.1, that control. Paragraph 14(h) gives the parties the option of arbitrating a dispute only if both parties agree to arbitrate the dispute. It also provides the alternative that if the parties do not mutually agree, all disputes may be dealt with in a court of competent jurisdiction. The language is unambiguous and that arbitration is not mandatory. MTC's arguments to the contrary are unpersuasive. The language in the Agreement clearly intends that arbitration will only occur if both parties agree to it.

5

Therefore, what needs to be determined is whether in fact MTC and the City agreed to arbitrate MTC's claims.[4] After MTC's demand for arbitration to the AAA, the City sent a letter to MTC indicating that it did not agree to arbitration. However, MTC argues that the City consented to arbitration because Harza and/or Figurelli consented on the City's behalf. The first question we must answer is whether Harza's or Figurelli's alleged consent are sufficient to bind the City. We do not believe that they are. Under Illinois law, an agent of a municipal corporation cannot bind that municipality unless the agent has explicit authority from the City to do so. *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill.App.3d 638, 643 (1987). Parties dealing with a municipal corporation are charged with notice of the limited authority and power of a municipal agent. *D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill.App.3d 60, 63 (1986). Nowhere in the contract between the City and Harza is Harza given explicit authority to contract on behalf of the City, let alone to consent to arbitration on behalf of the City. And, according to the City's affidavits, Harza was never given any such authority.

MTC argues that an internal memorandum to Figurelli from Harza on March 9, 2000, is evidence of Harza's consent to arbitrate on behalf of the City. We find that this memo in no way constitutes consent. Harza wrote the memo to Figurelli evaluating MTC's proposal for delay costs and advising recommendations. In regard to MTC's complaints concerning removal of a boulder and seven other contended issues, Harza stated: "The City should reject MTC's claim for delay costs . . . . Final resolution, if contested, will require arbitration as specified in the Contract conditions . . . . Harza recommends the City attempt to settle the dispute with MTC without arbitration." First of all, this is an internal memo, written in the context of potential dispute

---

[4] Once again, we note that the City's opposition was not a motion to dismiss and while MTC may argue that a motion to dismiss containing extrinsic evidence should be converted to a motion for summary judgment and that a motion for summary judgment cannot be granted when there are disputed issues of fact, there are no disputed issues of fact here as to the making of the Agreement and no evidentiary hearing is required. 9 U.S.C. §4.

6

resolution. In addition, this letter was not sent to MTC, and does not constitute consent by the City to arbitrate. Nor does this memorandum in any way affect the terms of the Agreement, which state that the parties must agree to arbitrate, regardless of whether Harza believed arbitration was required.

As far as Figurelli's alleged consent, we come to the same conclusion. As an employee of a municipal corporation, he cannot bind the municipality unless he has been given authority to do so. *Chicago Food Management, Inc.*, 163 Ill.App.3d at 643. MTC is charged with notice of the limits of Figurelli's authority. *D.C. Consulting Engineers, Inc.*, 143 Ill.App.3d at 63. Figurelli's authority to administer the Water and Sewer Department does not include the power to contract on behalf of the City. Moreover, according to the City's affidavits, Figurelli was never given the authority to consent to arbitration on behalf of the City. *See* Affidavit of Judith A. Aiello.

Even if Harza's or Figurelli's consent was potentially binding on the City, we find that the scope of MTC's demand for arbitration far exceeds the limits of that purported consent. The alleged consent of Harza and Figurelli were simply recommendations for arbitration of specific, limited claims. Harza's March 9, 2000, representation in writing dealt with a suggestion for resolving a specific claim involving a boulder in the Ladd Shaft. It in no way was meant as a consent to a $7.5 million lawsuit listing all of MTC's claims. In addition, Figurelli advised MTC that it could commence arbitration proceedings to resolve specific claims for equitable adjustments of the contract price and the contract time, not for every claim arising out of the contract. The alleged consent given in July, 1999 was for specific disputes and claims complained of in April, 1999. All of these purported consents were given prior to MTC's filing of a demand for arbitration with the AAA. After that demand, the City sent MTC a letter indicating that it did not consent to arbitration. MTC has failed to meet its burden of showing that these claims for breach, estoppel, misrepresentation, etc. are subject to arbitration. *See Int'l Ins. Co. v. Certain Underwriters at Lloyds of London*, 1992 WL 675951, *2 (N.D.Ill. Apr. 29, 1992). The City did not consent to

7

arbitration of such extensive claims as are included in MTC's complaint filed contemporaneously with its motion to compel arbitration.

## CONCLUSION

Because the Agreement requires consent to arbitrate, and because we find the City did not consent to arbitrate, we find that arbitration cannot be compelled. For the foregoing reasons, we deny the motion to compel arbitration. It is so ordered.

Marvin E. Aspen, District Court Judge

Dated: 1/24/01