Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6979 | **DATE** | 10/16/2001 |
| **CASE TITLE** | McNally Tunneling Corporation vs. City of Evanston, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order: McNally's motion to compel [58-1] is granted to the extent it seeks production of paragraph #3 through paragraph #7 of the document (settlement agreement) and is denied to the extent it seeks production of any other part of the document (joint-defense agreement).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 1 8 2001 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

McNALLY TUNNELING CORPORATION, )
an Illinois corporation )
 )
      Plaintiff, )
 )
v. ) No. 00 C 6979
 )
CITY OF EVANSTON, ILLINOIS, ) Chief Judge Marvin E. Aspen
 ) Magistrate Judge Nan R. Nolan
      Defendant. )

DOCKETED
OCT 18 2001

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff McNally Tunneling Corporation's ("McNally") Motion to Compel Production of a Settlement Agreement (Docket Entry #58). Defendant City of Evanston ("Evanston") objects to McNally's characterization of the document as a settlement agreement, contending that the document is nothing more than a joint-defense agreement between Evanston and Harza Environmental Services ("Harza") that is protected from disclosure by the common interest doctrine. After examining the document *in camera*, this Court concludes that the document contains both a settlement agreement (paragraph #3 through paragraph #7) and a joint-defense agreement (remainder of document). For the following reasons, this Court grants McNally's motion to the extent it seeks production of the settlement agreement (paragraph #3 through paragraph #7) and denies McNally's motion to the extent it seeks production of the joint-defense agreement (remainder of document).

## BACKGROUND

In 1997, Evanston contracted with McNally to provide services in connection with a $16 million sewer project. Evanston also contracted Harza to serve as the lead engineer and Evanston's

representative on the project. Things did not go as planned and McNally sought increases in the contract terms regarding compensation and time allotted for completion. Evanston refused. After several attempts to resolve the dispute, McNally filed this breach-of-contract suit. McNally's contentions are based in part on the alleged failure of Evanston's agent, Harza, to discharge its duties as lead engineer.

## DISCUSSION

The parties do not agree on whether the document at issue is a joint-defense agreement or a settlement agreement. This Court is not bound by either McNally or Evanston's characterization of the document. In *Tribune Co. v. Purcigliotti*, no. 93 Civ. 7222, 1997 WL 540810, at *3 (S.D.N.Y. Sept. 3, 1997), the court rejected the party's contention that a document was solely a joint-defense agreement. The court in that case determined that the document contained both a joint-defense agreement and a "standstill" agreement.[1] *Id.* After reviewing the document in this case, this Court has come to a similar conclusion. Instead of bringing Harza into the case as a third-party defendant, Evanston entered into a settlement agreement with Harza (paragraph #3 through paragraph #7). Additionally, Evanston and Harza also entered into a joint-defense agreement, stating their intention to cooperate in defending McNally's claims. (entire document except paragraph #3 through paragraph #7). Despite the incorporation of both of these agreements into one document, this Court analyzes the joint-defense agreement and the settlement agreement as two separate documents.

---

[1] A "standstill" or "tolling" agreement is an agreement in which two or more parties on the same side of a lawsuit agree to not pursue legal claims against one another until some point in the future, usually after the present suit has been resolved.

-2-

A. Relevance of the Settlement Agreement[2]

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part that: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Evanston argues that the settlement agreement is not relevant because Federal Rule of Evidence 408 precludes the use of settlement negotiations as evidence. This is incorrect for two reasons. First, Rule 408 is concerned solely with the admissibility of evidence; it does not limit the discovery of evidence. *Coltec Industries, Inc. v. American Motorists Ins.*, 197 F.R.D. 368, 372 (N.D. Ill. 2000) *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 301-302 (D. Kan. 2000); *see also* Fed. R. Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). Second, even if Evanston's reliance on Rule 408 was appropriate in the discovery context, the rule "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness." Fed. R. Evid. 408; *see also Bankcard America, Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 483 (7th Cir. 2000). In this case, McNally argues that the settlement agreement is relevant to proving the bias or prejudice of a Harza witness. According to McNally, the contract between McNally and Evanston requires Harza to review McNally's claims for equitable adjustments to the contract terms. McNally contends that Evanston's refusal to adjust the contract terms was based on Harza's analysis of McNally's claims and, therefore, a Harza representative is likely to testify at trial. Evanston does not dispute any of these statements. McNally argues that, assuming the settlement agreement requires Harza to pay some portion of any judgment, the agreement provides Harza with a direct financial interest in the case—evidence that is relevant to the potential bias of a Harza

---

[2] Evanston does not challenge the relevance of the joint-defense agreement.

witness. This Court agrees. Accordingly, this Court concludes that the settlement agreement (paragraph #3 through paragraph #7) meets the broad standard of relevance imposed by Rule 26.

B. Application of the Common Interest Doctrine

Evanston also argues that the common interest doctrine protects the settlement and joint-defense agreements from disclosure. The common interest doctrine is not an independent source of confidentiality. *In re Federal Trade Comm'n*, no. M18-304, 2001 WL 396522, at *2 (S.D.N.Y. Apr. 19, 2001); *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000). Rather, it simply extends the protection afforded by other doctrines, such as the attorney/client privilege and the work product rule. *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990); *Griffith v. Davis*, 161 F.R.D. 687, 692 (C.D. Cal. 1995) (collecting cases). As a general matter, a party waives the confidentiality of privileged communications by disclosing the information to a third party. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 518 (N.D. Ill. 1990). Under the common interest doctrine, however, the disclosure of privileged material to a third party will not result in waiver if the parties share a common interest in the case. *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989); *IBJ Whitehall Bank & Trust Co. v. Cory & Assoc., Inc.*, no. 97 C 5827, 1999 WL 617842, at *3 (N.D. Ill. Aug. 12, 1999).

To constitute a "common interest" it is not enough that the parties have some interests that overlap; the parties must have a strong identity of interests. *See Katz v. AT & T Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000) (interests must be identical); *North River Ins. Co. v. Columbia Casualty Co.*, No. 90 Civ. 2518, 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995) (same); *Union Carbide Corp. v. Delaware Chemical Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985) (same); *see also Government of Virgin Islands v. Joseph*, 685 F.2d 857, 862 (3d Cir. 1982) (privilege inapplicable where

defendants' interests were antagonistic). For example, in rejecting application of the common interest doctrine, one court reasoned that even assuming an insurer and an insured "shared an interest in lowering the amount of damages in the underlying action . . . [they] did not . . . share an interest in characterizing how that damage occurred, what type of damage has occurred, or how [the insured] responded to the damage." *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 418 (D. Del. 1992); *see also Beneficial Franchise Co. v. Bank One*, no. 00 C 2441, 2001 WL 492479, at *11 (N.D. Ill. May 9, 2001) ("the absence of any identified conflict among the defendants in their positions with respect to the case. . . show[s] that the common interest doctrine certainly may apply."); *cf. Tribune*, 1997 WL 540810, at *3 (standstill agreement does not relate to common interests). Consistent with the requirement that issues of privilege must be determined on a document-by-document basis, *Bowman v. Brush Wellman, Inc.*, no. 00 C 50264, 2001 WL 1098056, at *2 (N.D. Ill. Sept. 13, 2001), this Court will analyze whether Evanston and Harza have a sufficiently strong community of interests with regards to each of the agreements in this case.

Applying these principles to the settlement agreement, it is clear that the settlement agreement relates to adverse interests between Evanston and Harza. Evanston acknowledged in open court the existence of adverse interests between itself and Harza. Evanston's attorney stated "we have to make a tactical decision as to whether we bring [Harza in as a third-party defendant]." Tran., February 6, 2001, at 3-4. Instead of bringing Harza into the suit, however, Evanston and Harza entered into the settlement agreement (paragraph #3 through paragraph #7). It appears that the parties approached this agreement at arm's length, each asserting a position directly in conflict with the other. This Court is not persuaded by Evanston's argument that the settlement agreement does not preclude either Evanston or Harza from suing one another. Although the agreement may not

-5-

explicitly release certain claims, the terms of the agreement, at the very least, significantly restrict the legal options Evanston and Harza may employ against one another in the future. Accordingly, this Court concludes that Evanston has failed to establish that the settlement agreement relates to common rather than adverse interests. Therefore, the common interest doctrine does not apply to the settlement agreement. As this is the only basis Evanston asserts to protect the settlement agreement from disclosure, this Court grants McNally's motion to the extent it seeks production of the settlement agreement (paragraph #3 through paragraph #7). *See Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 140 (N.D. Ill. 1993) (assuming document privileged, court concluded privilege waived where disclosure to third party not protected by common interest doctrine).

Evanston next argues that the joint-defense agreement (entire document except paragraph #3 through paragraph #7) reflects Evanston and Harza's common interest in defending McNally's suit. This Court agrees. Unlike the settlement agreement which relates to future potential litigation between Evanston and Harza, the joint-defense agreement describes Evanston and Harza's joint strategy for defending McNally's suit. The Court recognizes that just because two parties agree to cooperate in defending a particular lawsuit does not automatically mean that the common interest doctrine applies. For example, although an insurer and an insured agree to cooperate in defending a lawsuit—reflecting their shared interest in lowering the total amount of damages—the common interest doctrine does not apply if those parties have an incentive to blame each other for alleged wrongful conduct. *E.g. Remington*, 142 F.R.D. at 418. In this case, however, because Evanston and Harza resolved their adverse interests in the settlement agreement, they do not have an incentive to blame each other for the alleged breach of contract. Accordingly, this Court concludes that Evanston

and Harza have a common interest in defending McNally's suit, an interest that is reflected in the joint-defense agreement.

Once a litigant establishes that it and another party has a sufficiently strong identity of interests regarding a certain document, to claim protection of the common interest doctrine, the litigant must then show that the document contains privileged information. *See Allendale*, 152 F.R.D. at 140 (common interest doctrine only protects documents which otherwise fall under a privilege); *see also In re Grand Jury Proceedings*, 220 F.3d 568, 701 (7th Cir. 2000) (A party refusing to produce a document on the grounds of privilege bears the burden of establishing that the material is privileged). Evanston argues that the joint-defense agreement is protected by both the work product doctrine and the attorney/client privilege. The central purpose of the work product doctrine is to shelter the mental processes of an attorney, protecting from disclosure her analysis and preparation of her client's case. *United States v. Nobles*, 422 U.S. 225, 238 (1975) (discussing *Hickman v. Taylor*, 329 U.S. 495 (1947)). To claim protection of the doctrine, a party must demonstrate that the materials in question that would otherwise be discoverable were prepared in anticipation of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996); *see also* Fed. R. Civ. P. 26(b)(3). The joint-defense agreement in this case was clearly prepared in anticipation of litigation. Moreover, after inspecting the joint-defense agreement, this Court notes that production of that document would reveal the mental processes of Evanston's attorney. Unlike the attorney client privilege, the work product doctrine provides only a qualified privilege. The privilege may be overcome if the party seeking discovery demonstrates that it has both a substantial need for the material and that it would suffer undue hardship if required to obtain the information in some other way. *See Logan*, 96 F.3d at 976; Fed. R. Civ. P. 26(b)(3). McNally does not make

a substantial-need or an undue-hardship argument regarding the joint-defense agreement. Accordingly, this Court concludes that the joint-defense agreement (entire document except paragraph #3 through paragraph #7) is protected by the work product doctrine.

Evanston also contends that the joint-defense agreement is protected by the attorney/client privilege. When deciding claims of attorney/client privilege in diversity cases, federal courts apply the law of the state in which it sits. *See* Fed. R. Evid. 501; *Abbott Laboratories v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 404 (N.D. Ill. 2001). Because Illinois courts apply Illinois law to such questions, *see Abbott Laboratories*, 200 F.R.D. at 405, this Court will apply Illinois law as well. The attorney/client privilege applies where (1) legal advice of any kind is sought, (2) from a professional legal advisor in her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor (8) except the protection be waived. *See* Graham, Cleary & Graham's Handbook of Illinois Evidence, § 505.1 at 328 (7th ed. 1999) (citing *People v. Adam*, 280 N.E.2d 205, 207 (Ill. 1972)). After inspecting the joint-defense agreement, this Court concludes that the attorney/client privilege applies to the communications contained in that agreement. Accordingly, McNally's motion to compel production of the joint-defense agreement (entire document except paragraph #3 through paragraph #7) is denied.

## CONCLUSION

McNally's motion to compel is granted to the extent it seeks production of paragraph #3 through paragraph #7 of the document (the settlement agreement) and is denied to the extent it seeks production of any other part of the document (the joint-defense agreement).

ENTER:

*Nan R. Nolan* (signature)
Nan R. Nolan
United States Magistrate Judge

Dated: 10/16/01