# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6979 | **DATE** | 12/7/2001 |
| **CASE TITLE** | McNally Tunneling Corporation vs. City of Evanston, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant City of Evanston's Motion to Compel Production of Documents [100-1] is granted in part and denied in part. In light of the December 10, 2001 discovery deadline, McNally has until December 14, 2001 to comply with this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 1 0 2001 | |
| | Docketing to mail notices. | | | 105 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | KJc courtroom deputy's initials | DOCKETING DEC -7 PM 2: 30 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| McNALLY TUNNELING CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 6979 |
| | ) | |
| CITY OF EVANSTON, ILLINOIS, | ) | **Chief Judge Marvin E. Aspen** |
| | ) | **Magistrate Judge Nan R. Nolan** |
| Defendant. | ) | |

[stamp illegible]

### MEMORANDUM OPINION AND ORDER

DEC 1 0 2001

Before the Court is Defendant City of Evanston's ("Evanston") Motion to Compel

Production of Documents (Docket Entry #100). McNally opposes the motion, asserting that it has

already produced the documents, that it does not have the documents, or that it would be unduly

burdensome to require McNally to search for the documents. For the following reasons, this Court

grants Evanston's motion to the extent it seeks production of the contract documents and/or

specifications and the partnership/joint-venture agreement for the Markhum, Canada project—the

project McNally alleges necessitated the purchase of a new tunnel boring machine. This Court

denies Evanston's motion to the extent it seeks production of (1) specific daily reports from 1999-

2001; (2) letters exchanged between McNally and Harza; (3) Jan Nilsen's "Day-Timer calender";

(4) daily reports from Phase I of the Sewer Project; and (5) email and computer files. In light of the

December 10, 2001 discovery deadline, McNally has until December 14, 2001 to comply with this

order.

### BACKGROUND

Evanston contracted with McNally to provide services in connection with one phase—Phase

VI-A—of a $16 million sewer project ("Sewer Project"). Phase VI-A was delayed when McNally

encountered boulders and other subsurface obstructions. Pursuant to contract provisions permitting equitable adjustments of contract terms, McNally sought increases in the terms regarding compensation and time allotted for completion. Evanston refused. McNally filed suit alleging that Evanston misrepresented the subsurface conditions during contract negotiations and breached the contract when it unreasonably denied McNally's requests for equitable adjustments. McNally also alleges that Evanston interfered with McNally's performance of the contract. Evanston counterclaimed, alleging that McNally's failure to complete Phase VI-A in a timely manner delayed work on Phase VI-B of the Sewer Project.

### Discovery

As a result of an earlier discovery dispute, McNally produced to Evanston all or nearly all of the unprivileged documents it had in its possession. Since that production, the parties have disagreed on which one of them has the burden to sift through the approximately one hundred boxes of documents to determine if a certain document has been turned over. Evanston argues that McNally should have to produce or identify the location of particular documents. McNally responds that Evanston wanted all of the documents and cannot now complain that the document production was too voluminous. In response, Evanston implies that it was not its choice to have all the documents copied. Evanston states that it simply agreed to this Court's suggestion that McNally copy all of its files. Given these conflicting versions and the parties' insistence that the responsibility for the decision to copy all of McNally's documents impacts the current motion, it is necessary to explain more fully this earlier dispute.

On June 6, 2001, the district court referred to this Court McNally's Motion to Compel Production of Documents (Docket Entry #45). On June 8, 2001, this Court held a hearing to

determine whether McNally should be required to make available its documents for inspection in Chicago or Cleveland. According to Evanston, McNally should be required to ship the documents from McNally's home office in Cleveland to McNally's local counsel in Chicago. Evanston argued that due to the technical nature of many of the documents the city's inspection would require several people, including paralegals and city employees, and that it would not be possible to send those individuals to Ohio. *See* June 8, 2001 Hearing Tr. at 12. During Evanston's argument, this Court asked Evanston why it did not simply ask McNally to ship copies of all of its documents to Chicago. *See id.* at 12, 18. Evanston was not initially receptive to this suggestion, preferring instead to have a Chicago-based inspection of the documents. *See id.* at 13. McNally argued next, contending that it should be allowed to keep the documents in Cleveland because McNally used the documents in the day-to-day operation of its business and it did not want to risk losing or damaging the original documents during shipping. *See id.* at 27, 31-32. During McNally's argument, this Court indicated that it was inclined to rule for McNally. *See id.* at 30-31. After McNally finished its argument, this Court allowed Evanston another opportunity to be heard before ruling. *See id.* at 44. At that point, Evanston stated McNally should copy every document and ship the copies to Chicago because "[w]e don't have the ability or the time to send the people that need to go [to Cleveland]." *See id.* A fair reading of the entire transcript demonstrates that Evanston reversed its position because this Court was about to deny Evanston's motion and order McNally to make the documents available in Cleveland. *See id.* at 45 ("[P]laintiffs read the law correctly . . . in order to minimize disruption of a party's business, items should be produced, inspected and copied at the producing party's office during reasonable hours, especially where . . . removal [of the records] would seriously interfere with . . . the company's business.").

If Evanston did not want copies of all of McNally's documents it could have inspected the documents in Cleveland and selected only those documents it deemed relevant to the case. Alternatively, Evanston could have examined the copied set of McNally's documents in Chicago and returned those documents it deemed irrelevant (the functional equivalent of requiring a Chicago-based inspection of McNally's documents). Instead, Evanston freely chose to have McNally copy all of its documents.

## DISCUSSION

Evanston contends that McNally has failed to produce certain documents that fall under the following categories. Unless otherwise indicated, McNally does not contend that the specified documents fall outside of Evanston's document requests.

### 1. Daily Reports From 1999-2001

In response to Evanston's request for daily reports, diaries, and logs for the Sewer Project, McNally produced numerous daily reports. Subsequently, Evanston informed McNally that it did not have reports for approximately 48 days of the project. After searching its files, McNally informed Evanston the location (by Bates number) of eight of those reports. In its current motion, Evanston states that it still cannot locate daily reports for 40 specific dates.[1] Evanston asks this Court to direct McNally to identify by Bates number these specific reports. McNally responds that it has searched its Daily Report files and has not located any additional reports. McNally believes that daily reports were not prepared for each and every day of the Sewer Project. McNally contends

---

[1] Evanston seeks (1) Year 1999 reports for March 8-11, 16, 24, 26, 29, May 31, June 21-25, 28-30, July 1-2, 5-9, 12-14, 16, August 16, September 3, 30; December 21-23; (2) Year 2000 reports for July 3, 10, 19, October 10; and (3) Year 2001 reports for January 22, June 15.

that it would be unduly burdensome to require it to comb through approximately one hundred boxes of documents to see if one or more of the reports were misfiled.

As noted above, the parties disagree about which of one of them should have to sift through all of the documents in this case to determine whether any of the daily reports were misfiled. This Court holds that the most equitable solution is to place this burden on Evanston. McNally has already checked its own Daily Report files. To make McNally search through all of the documents based on the off-chance that certain reports—reports which may not even exist—were misfiled is too great of a burden. Accordingly, this Court denies this portion of Evanston's motion.

## 2. McNally-Harza Letters

Evanston seeks production of sixteen letters exchanged between McNally and Harza—four sent by McNally and twelve sent by Harza.[2] Harza is the lead engineer and the city's representative on the Sewer Project. McNally argues that it should not have to search through the documents it already produced to locate the missing letters. Noting that Evanston and Harza signed a joint-defense agreement, McNally argues that it would be less burdensome to require Evanston to retrieve the letters from Harza. Given the joint-defense agreement and that the majority of the letters sought by Evanston were written by Harza, this Court agrees with McNally. Accordingly, this portion of Evanston's motion is denied.

## 3. Jan Nilsen's "Day-Timer Calenders"

Jan Nilsen was McNally's project manager on the Sewer Project for the first six months of 2000. Referring to Nilsen's calenders as "diaries," Evanston argues that it requested the calenders

---

[2] Both McNally and Harza sequentially numbered their correspondence. Evanston seeks McNally letters numbered 50, 60, 84 and 85, and Harza letters numbered 13, 25, 28, 39, 41, 42, 67, 92, 110, 119, 121, and 122.

for 1999, 2000, and 2001 when it asked McNally to produce "[a]ll documents that comprise or refer to daily reports, diaries, and logs for the Project." McNally contends that these documents are not diaries, daily reports or logs and, therefore, Evanston never requested them. Nilsen's deposition testimony appears to support McNally's argument. Nilsen testified that he marked "appointments" and "meetings, people I talk to" in his calenders but that the calenders do not contain any notes. *See* Nilsen Dep. Tr. at 56. Even assuming that Nilsen's calenders are covered by Evanston's document requests, McNally responds that it does not have any of Nilsen's calenders in its possession. McNally further states that Nilsen—a citizen and resident of Canada—is not a McNally employee. Based on McNally's response that it does not possess Nilsen's calenders, this Court denies this portion of Evanston's motion.

## 4. Documents Related to McNally's Purchase of a New Tunnel Boring Machine

According to Evanston's motion, McNally claims damages for the purchase of a new tunnel boring machine ("TBM"). McNally planned to use its TBM on both the Sewer Project and a project in Markhum, Canada ("Canadian project"). Delays in the Sewer Project tied up the TBM and McNally was forced to buy a new TBM for the Canadian project. McNally does not dispute Evanston's characterization of McNally's theory of damages related to the new TBM. Evanston seeks production the following categories of documents related to McNally's purchase of the new TBM: (1) Lovat quotations Nos. L1-99100440 & L2-99100440 and any other Lovat quotes;[3] (2) Lovat work order; (3) contract for the purchase of the new TBM; (4) evidence that McNally paid for the new TBM, e.g., cancelled check; (5) contract documents and specifications for the Canadian project; and (6) McNally's partnership or joint-venture agreement with its partner for the Canadian

---

[3] Lovat appears to be the company that sold the new TBM to McNally.

project. Regarding the first three categories, McNally responds that it has searched its records and does not have any responsive documents. Regarding the fourth category, McNally states that it already produced its evidence of payment, specifically documents Bates numbered MTCH 040480 through MTCH 040489. Regarding the fifth and sixth categories, McNally argues that Evanston never requested these documents, that McNally does not possess these documents and that McNally is not a party to a partnership or joint-venture agreement related to the Canadian project.

At trial, McNally will bear the burden of establishing that it was forced to buy a new TBM for a specific amount of money. Failure to disclose any documents referenced by the above categories could preclude McNally from relying on that evidence at trial. Fed. R. Civ. P. 37(c)(1). Based on McNally's responses that it does not possess any documents referenced by categories 1-3 and that it has already produced its documents establishing that it paid for the new TBM, this Court denies Evanston's motion as it relates to those categories of documents.

McNally argues that Evanston's document request cannot be reasonably construed to include requests for those documents listed in categories five and six. This Court disagrees. Evanston requested "[a]ll documents that refer to the purchase of a new tunnel boring machine by McNally for a project subsequent to the [Sewer] project," as well as "[a]ll documents that relate to McNally's claim for damages," and "[a]ll documents upon which McNally has or will rely at trial for the allegations in McNally's Complaint." Assuming that one of McNally's theory of damages is that delays in the Sewer Project forced it to purchase a new TBM for the Canadian project (an assumption McNally does not dispute), this Court concludes that Evanston requested the contract documents/specifications and the partnership/joint-venture agreement for the Canadian project. Accordingly, this portion of Evanston's motion is granted. To the extent these documents exist and

-7-

McNally possesses them, McNally must produce the contract documents and/or specifications for the Canadian project and McNally's partnership/joint-venture agreement for the Canadian project.

5. Daily Reports from Phase I

Evanston seeks production of McNally's daily reports from Phase I of the Sewer Project. McNally responds that it searched its Phase I records and did not find any daily reports. Accordingly, this portion of Evanston's motion is denied.

6. Computer Files and Emails

Evanston seeks production of emails and computer files. Regarding the latter, Evanston specifically seeks production of McNally's computerized schedules and cost summaries. McNally responds that all of the emails maintained on their system relating to the Sewer Project have already been produced, either initially or as part of a supplemental production of records which has been available to Evanston since November 15, 2001. Based on McNally's response that it has already produced all of its emails, Evanston's motion is denied to the extent it seeks production of emails. Regarding the computerized schedules and cost summaries, McNally responds that it has already produced the information contained in those computer files in hard-copy form. Because it takes substantial effort to load the information into the computer, McNally argues that requiring it to produce the computer files would be unfair because the files would allow Evanston to perform a computer-assisted analysis of the information without doing any of the "leg work" of inputing the data into a computer file.

McNally's response indicates that it has already provided Evanston with all of the information contained in its computer files in hard-copy form (a point that must have been discussed during the party's good-faith efforts to resolve this issue before bringing it to the court as required

-8-

by Federal Rule of Civil Procedure 37(a)(2)(A)). Because this is Evanston's motion to compel, they have the burden of establishing that the hard copies of the computer files are insufficient. Regarding the computerized schedule information, Evanston offers only the vague assertion that "the electronic version of McNally's schedules will better allow the City and its consultants to understand the reasons for the delays encountered by McNally on this project." This statement does not explain why the hard-copy version of the computerized schedule information is insufficient. This Court's own research has uncovered an apparent split of authority on whether a party is entitled to both hard-copy and electronic versions of computer files. *Compare Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 932-33 (9th Cir. 1982) (district court did not abuse its discretion in denying request for computer tapes where party already had all information from tapes on wage cards) *with Anti-Monopoly v. Hasbro*, No. 94 CIV. 2120, 1995 WL 649934, at *2 (S.D. N.Y. Nov. 3, 1995) ("[P]roduction of information in 'hard copy' documentary form does not preclude a party from receiving that same information in computerized/electronic form."). But the parties do not cite or discuss these or any other cases. Given the undeveloped nature of Evanston's motion, this Court determines that Evanston has failed to demonstrate that it is entitled to both hard-copy and electronic versions of McNally's computer files.

One further point regarding the hard-copy versions of the computer files requires discussion. Evanston speculates that the hard-copies produced by McNally may be incomplete. Therefore, this Court orders McNally to supplement the hard-copy versions of its computer files to ensure that it has produced all of the information contained in those files to Evanston. However, to the extent Evanston seeks electronic versions of the computer files, Evanston's motion is denied.

## CONCLUSION

Evanston's motion is granted to the extent it seeks production of the contract documents and/or specifications and the partnership/joint-venture agreement for the Canadian project—the project McNally alleges necessitated the purchase of a new TBM. This Court denies Evanston's motion to the extent it seeks production of (1) specific daily reports from 1999-2001; (2) letters exchanged between McNally and Harza; (3) Jan Nilsen's "Day-Timer calendar"; (4) daily reports from Phase I of the Sewer Project; and (5) email and computer files. McNally must also supplement its production of the hard-copy versions of its computerized schedule and cost-summary files to ensure that Evanston has all of the information contained in these files. Additionally, McNally must submit an affidavit stating the following: (1) McNally's daily report files for 1999-2001 do not contain any of the daily reports enumerated in Evanston's motion; (2) McNally does not possess any of Nilsen's calendars from the years 1999-2001; (3) McNally does not possess the Lovat quotations referenced in Evanston's motion or any other Lovat quotes; (4) McNally does not possess the Lovat work order referenced in Evanston's motion; (5) McNally does not possess additional documents establishing that it paid for the new TBM (other than the documents McNally has already produced); (6) McNally's Phase I files do not contain any daily reports that have not been produced; (7) McNally has already produced or made available for production all emails in its possession relating to the Sewer Project; and (8) McNally has produced all of the data in its computerized schedule and cost-summary files in hard-copy form. *See Ryan v. DuPage County Jury Comm'n*, No. 92 C 6519, 1994 WL 161899, at *3 (N.D. Ill. Apr. 26, 1994). Finally, if McNally does not possess either the contract documents and/or specifications or a partnership/joint-venture agreement for the Canadian project, it must include a sworn statement that it does not possess these documents in the above-

described affidavit. *See id.* In light of the December 10, 2001 discovery deadline, McNally has until December 14, 2001 to comply with this order.

ENTER:

Nan R. Nolan

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: 12 | 7 | 01